Good afternoon. We will hear Consumer Watchdog v. Wisconsin Alumni Research. Ms. Hassan? May it please the Court. The statute under which Consumer Watchdog seeks judicial review applies only to a concretely defined class of injured persons. Every person within the class shares a set of facts, a set of injuries in fact, that differentiate them from other third parties. Is this more than a procedural right? I mean, what the statute says is you have the right to request a reexamination. Isn't that a procedural right, the nature of which is similar to the other cases which have not gone away under the APA and ESA? Section 311 gives us the right to request a reexamination. Section 311 applies to any third party requester at any time. Section 315 gives third party requesters who have received a final decision the right to appeal that decision. And it is under Section 315 that we appeal. Every person to whom Section 315 applies has suffered certain injuries in fact. First, they are also subject to Section 317, the estoppel provision, which prevents them from challenging the patent in the future, either at the PTO or in litigation. In order to receive a final decision, they also had to pass the burden of Section 313. Section 313 says that the examiner will order a reexam when the requester has presented a substantial new question of patentability. You threw out rather quickly that they suffer an injury. What's the injury they suffer? Well, they give up their right to challenge the patent in the future through reexam or litigation. I'm going through the injuries, that's one. Is that a procedural matter? What's the implications of that? Of course, we're looking for a constitutional injury in fact. How does that fit within the constitutional dimension of injury? There are a few injuries. That is one because they give up a right that others have. They are differentiated from others and they've given up the right to challenge the patent in the future. Where is that concrete? They're not practicing anything. That may be speculative, I guess in theory it may be true, but how is that injury at all concrete? Anything more than complete speculation? Well, it applies to them and not to others and it specifically applies to them. I'll go through the other injuries as well. They are that in order to have the examiner initiate the reexam, they had to meet their threshold burden of proof. They had to put in time and effort to present a substantial question of patentability. Third, in Section 311, in order to get the examiner to initiate the reexam, they had to comply with the requirements of the request under 311B. Now, 311A says that any third party requester at any time may request a reexam, but it's 311B that really is the limiting factor on who requests a reexam. Because 311B says that the requester must not only pay a fee, which must accompany any reexam request, so there's an economic injury to any requester. And second, the requester must set forth the pertinency and manner of applying cited prior art to the claim for which reexamination is sought. But the patent poses no risk at all to consumer watchdogs, so how is this a constitutional injury that we are seeking? The injury, the legal injury, is the violation of the third party requester's right, of consumer watchdog's right, to a satisfactuous decision. But that's a procedural right. Exactly. Yes, but didn't it in Lujan? I direct your attention to Note 8 of Lujan on page 573. It says that even when you're talking about procedural rights, the procedural right still has to endanger a concrete interest of the plaintiff, apart from his having interest in the procedures observed. I understand you think that your procedural rights have been impaired because you got inter-party review and you didn't get a decision that you're satisfied with, but what's the separate concrete interest in danger? Lujan talks about cases in which Congress can elevate to legally cognizable concrete de facto injuries that were previously inadequate at law, and that is exactly what Congress did here in Lujan. And it can create a right, that's true, the deprivation of which is an injury, but has there been a right created here, the deprivation of which is a constitutional injury? Yes, absolutely. What's that? Our interest is in a decision with which we are satisfied, and the way that we have secured… Yes, but that's true of everybody in the room and everybody beyond this room. You haven't suffered an injury of constitutional dimension when it's something that affects everyone uniformly. We all have an interest in good government, we all have an interest in valid property rights, but what's your specific constitutional dimension injury? The reason not everyone has an interest in a satisfactory decision in this re-examination, only consumer watchdog has an interest, has a concrete interest in a satisfactory decision in this re-examination, because only consumer watchdog paid the fee, found the prior art… That's true in a lot of other administrative cases where people have rights to appear at an administrative level and they don't have rights to appear in a circuit court. I mean there's decisions from the DC circuit saying that, there's decisions from the 7th circuit saying that, and probably from a lot of other circuits. The fact that you were allowed to participate, you paid a fee, you expended resources, that's not an injury under the constitution. You have to show something directly tying your interest specifically in this litigation to an injury in fact and not just a procedural injury. And the injury in fact is what gives us the right, what secures our interest in the satisfactory decision. Let me put it this way, the statute doesn't give you a right to obtain a decision that you desire. You don't get a right to have a decision in your favor and that's really the only injury that you're giving to us is that we didn't win and that somehow deprives us of something. As you understand that's not a, I like the term constitutional injury, don't you have to show us commercial harm or jeopardy to your business or your standing in the marketplace or something of that nature? The FOIA cases are a perfect analogy because in FOIA all that is required of the requester is that they made the request and they were denied. No, no, no, you have a right in FOIA to receive that information unless it fits within an exception. But you're given a right. Upon request you have a right to receive that. Now see, you don't have upon request here a right to deny this patent. Once a requester has initiated, has gotten the examiner to initiate the reexamination, they do have a right to a decision on an invalid patent. The same way that a FOIA requester has a right to information that doesn't... But not the decision you desire, you just get a right to a decision, you got that, but where's your injury that allows you then to go to an Article III court? We cast doubt on the validity of the patent and Section 315 gives us the right to cancellation of claims that are invalid. The same way that FOIA requesters have a right to information that doesn't fall within the exemption. It's a perfect analogy. Is it really? Wouldn't the analogy be that you have a right to receive a patent, that right was denied by the unfavorable outcome and because you didn't get the patent, then you say, ah, now I have an injury in fact because Congress created a right, the deprivation of which causes me an injury. But they didn't create that kind of right for you, did they? Congress created a right for parties... They get to be heard, yeah, that's the procedural thing, but not a right to receive anything, the deprivation of which causes you a constitutional injury. Well, similarly you could say that in FOIA, the requesters are not entitled to information because the information may or may not fall within the exemption. They are entitled to information, isn't that the distinct difference here? They are entitled to information that doesn't fall within one of the nine exemptions. They get to be heard. It's a non-discretionary right and they're the ones that get to decide what information they seek and the government can only withhold it unless they show that it meets one of the exceptions. The analogy I think in your case would not be that as you're saying that you have the right to seek cancellation, the analogy would be if you had an absolute right to cancel the patent. We do have the right to cancel a patent that is invalid. The statute doesn't say anything remotely like that. I want to make sure to reserve some rebuttal time. You've got it. Don't worry, you've got it. Okay. Why don't you finish his question? I mean, if the statute says a third party requester can cancel a patent, you might have a different case, but that's completely at odds with the system. What you're saying is a third party requester can put forth grounds on which it thinks strongly that the patent should be canceled, but there are two different things there. I think we're confusing 311 with 315. I don't think it really matters. I think you have to show you have an absolute right to cancel a patent. We have an absolute right to cancel an invalid patent. Thank you, Ms. Hahn, very much. We'll make sure you get a full rebuttal time. Am I speaking first to Ms. Stoll or to Mr. Freeman? Mr. Freeman, please proceed. Thank you, Mr. Chief Judge. May it please the Court, Mark Freeman for the United States, including the United States Patent and Trademark Office. I'm happy to begin anywhere that may be of assistance to the Court. We do think that for the reasons the Court has already expressed, there is not a direct analogy. Congress, though, seems to have expected that anybody who appeals is going to get a right to come here, didn't they? They say anybody. Right, and they said any person in the Endangered Species Act provision that was at issue in Lujan. We think the answer is, yes, when Congress enacts a right for any person to go to an Article III court, implicit in that is a person who meets the requirements of Article III. But this is a little different than the ESA and the Endangered Species, because here you've got a balance that Congress has created. This whole system is a balance. If the patentee loses, they have a right to go and get judicial review. Congress is trying to create a balance, and here, under the system you're proposing, many, if not most, of people who lose on the other side, the non-patentee, will not have that right. So let me address that. There are a couple of points there. First, I just don't want to put down a marker. We can come back to this. But I don't think it's true that many, if not most, claimants will not have standing to appeal. Some. But let's just note that, for example, the TTO statistics are a little hard for them to track, but it's something like 50 to 75 percent of inter partes reexaminations involve parties already in litigation. Those parties would obviously have standing. And in addition, as we suggested in our brief, competitors, others, would have standing. This is the easy case, because this is a party who has no interest at all in the underlying patent. But let me go back to your point. Congress obviously intended to allow third-party requesters to give useful information to the patent office, to have them make quality decisions. That is an extremely valuable public interest, irrespective of whether an individual claimant has standing to appeal. This case illustrates that, because in this case, the request forced Wharf to amend its claims. That's a benefit to the public, irrespective of appealability. And then as to the sort of equal fairness point, about if the patent owner can appeal, why wouldn't it be the case that the requester can appeal? I would refer the court to a case that's cited in the briefs. It's a bit of a complex case, but I think it has a family resemblance to the situation here. It's the Asarco v. Kadish case in the Supreme Court. That case, I say it has family resemblance, because what it involved was a state court decision. It was a non-Article III tribunal, in that case a state court here in agency, allowed litigation on terms that did not involve Article III. State courts are of course not required to comply with Article III. And the question the Supreme Court grappled with in that case was there was a plaintiff who would not have had standing to bring suit in federal court, no standing at all, but in state court was allowed to bring a federal law claim against a defendant. The defendant lost in the state Supreme Court and tried to go to the Supreme Court. And the question in the case was, well, this litigation could never have been in federal court in the first instance. The plaintiff couldn't have brought it, but the defendant didn't choose to be there and he lost as a result on a federal law question. And what the Supreme Court said was, we do have Article III jurisdiction because the action of the non-Article III tribunal itself inflicted an injury on the defendant. So the analogy in this case would be if Worf's patent had been declared invalid, Worf could appeal to this court because the patent office's decision, which is independently operative, regardless of the underlying, whether, you know… Well, certainly, I mean, I don't think anybody is disputing that they have the right to judicial review. But the reason I mention this is because it was also clear in ASARCO that no one thought that if the plaintiff in the state court decision had won in the state court that the plaintiff could have gone to the Supreme Court because the plaintiff did not meet the requirements of Article III standing. Is there a way that Congress could fix this? Well, yes, you can give a… I mean, by crafting the provisions in a way that would create some sort of injury or standing. We know that Congress can write a… it depends on what you mean, Your Honor. Congress cannot, the Supreme Court said in the Summers case, the Article III injuries, the hard… Injury, in fact, is a hard floor of Article III that cannot be removed by statute. It's directly from the Summers decision. So Congress can't write a statute that says there is here, in this statute, no requirement of Article III injury. But Congress can frame the scheme so that any person who triggers it has something personal at stake. I mean, I think the Chief Judge made an interesting example before. You probably have standing if the way this worked is that if you showed… if a plaintiff who sought re-examination and obtained a change in the claims, then one ownership of the patent will be in a sort of bounty system. You might very well… No, no, no. I'm talking about somebody like Consumer Watchdog in these circumstances. Is it a matter of Congress coming up with purposes or an intent that suggests that they think patents are so valuable and have such an impact on the economy and on individuals and the cost of goods and yada-da, and so making their own argument through a purposes section or whatever that would suggest injury? Your Honor, I think it would be very difficult. Now, it shouldn't be surprising if we understand that to mean that Congress can't write a statute that allows a person who has no interest whatsoever in someone else's property to challenge the legal validity of that property. Congress recognizes that in certain circumstances they can do that because they create a cause of action. The FOIA case, I think, is a perfect example of that. And don't let my harsh or somewhat difficult questions to your colleague fool you. I think the FOIA example is a very good one. No, no, it is. I agree with that. You would agree that before FOIA, an individual off the street couldn't come to the government and say, I want this information, and then sue in court. There would be no standing. So they gave a right, and then they created a cause of action, but there's no standing anymore. That's true. I think you would have to come up with a concrete, substantive, personal right to which any applicant would be entitled. It's very difficult for me to... That's what I want to ask you. Why isn't that what they've done? The statutes read very, very similarly to me. In FOIA, you have a right to seek information. If you don't get it, you have a right to sue. Here, you have a right to challenge a patent. If your challenge is unsuccessful, you have a right to sue. So the right to challenge the patent... So in the FOIA cases, Your Honor, if you ask for... Let me put it this way. If my friend on the other side of the courtroom here were to file a FOIA request and didn't get what she asked for, I don't have standing to ask to sue and say that the government has to give the documents to her. The reason why... That illustrates the personal nature of the FOIA claim. It is that the obligation under FOIA for this to give the... is because it is a personal injury to the requester. If you take, for example... But she doesn't have an automatic right to every document she requests. There's an analysis, there are exceptions to the rule, and so forth. No, of course. And that's true in any legal claim. You don't have an automatic right to win, but you do have a right to assert it. You have a right to ask an Article III court to resolve your case or controversy. That's the extent. And earlier in the dialogue, we referred to things like the fee that they have to file and other things. The Supreme Court has directly addressed that. In the Diamond v. Charles case, they said the attorney's fees are not good enough to give Article III standing. In the Stevens case, Vermont Agency v. Stevens, the Supreme Court said that injuries pertinent to or byproducts of the litigation itself are not Article III injuries. So that's the reason why those things... Now, in your brief, you suggest that if you were to desire to engage in line drawing, there ought to be a distinction drawn between DJs and these cases in terms of injuries. So I own an iPhone, and I'm worried that I might be infringing a Samsung patent. Can I go into the patent office and get judicial review if I lose? You may very well be able to if you make the showing about standing. And we point out in footnote 2 of our brief the way that the D.C. Circuit, which encounters this problem with some frequency, deals with these questions. We all agree you would have the right to file a... I couldn't file a DJ. No, you could not file a declaratory judgment. But you could file a request for inter partes review, produce your prior art. You go through the process. You lose or win in the patent office. Of course, if you won, Samsung undoubtedly could appeal. If you lose, you would have to show when you came to this court through an affidavit or a declaration that you have some reason to believe that you might be infringing the patent and that if you are infringing the patent and you have some reason to believe that it may actually affect your real life, then you would have standing. And that may not be the same as... In fact, I think it would not be the same analysis that would follow in a declaratory judgment case. The fact that Congress has given you... You know, what gives us the basis for drawing that distinction? Language by Justice Kennedy and the opinion? Just a couple of the things in our brief. So the fact that Congress has given to a particular person a direct and specific right to appeal to an Article III court does not eliminate the injury in fact requirement, but it does eliminate other things. For example, it eliminates all prudential aspects of the Article III inquiry. And prudential rightness, prudential standing, as the court is well aware, there are ample cases discussing prudential aspects of Article III. All that falls away when Congress says, no, this person gets to appeal within 30 days. This is footnote four. This is footnote seven of the Lujan decision. It's also in the majority, text of the majority opinion in the Massachusetts versus EPA case. It has explained that when you have a procedural right, such as the right to go to an Article III court, that may relax the redressability and immediacy requirements of Article III. So, for example, in Your Honor's hypothetical, if you file the declaratory judgment action, you might well lose on ripeness grounds because we have no idea whether Samsung has any intention of coming after you. Well, if you have some possibility, future, not real, but future possibility of that happening, then the immediacy requirements of Article III may be relaxed by the fact that Congress has said, no, we want this person, if they have an injury in fact, to be able to come to court. And the last point we make in our brief is the estoppel provisions. So, instead of Consumer Watchdog, which is just a taxpayer watchdog group, without members, you had an association of science professors or science research that work in the stem cell area, and they had filed this. Would they have standing? If they made the showing with the declarations on the time they came into this court, they said, look, some substantial number of our members work in the area of human embryonic stem cells. We've never been threatened with infringement of the 913 patent, and we might want to do this type of research now or in the future, and we are concerned that the patent is invalid. The Patent Office's requirement that WRF amend its claims was not sufficient to redress that injury. That happens as soon as they file that WRF, and I'll ask your friend sitting next to you this, but WRF just gives covenants not to sue to all of those people. How would this issue on this patent ever get to us? Well, the covenant not to sue problem is, of course, a problem that has its own challenges, and the limits of the Supreme Court's rule in the Nike case are not entirely certain, but I think that what we know is that the covenant not to sue would have to provide complete and total protection, and if it were not sufficient and there were some reasonable basis to believe it was not complete and total protection, then it wouldn't be good enough. The other point I would add is, so let me just, I want to follow up on that because if we have a few professors but we're representing everybody and WRF came in and just gave covenants not to sue to the named professors, there may still be a live issue there. I think there might well be, Your Honor. It would depend. Of course, there are doctrines about representational standing and organizational standing. You would have to be in compliance with those doctrines, and the declarations that they would give to this court would have to provide evidence for that. Yes, if they gave us, if they gave us evidence for infringement against any researcher based upon this patent, then it really doesn't matter what the outcome of the PTO was. Exactly. It's not going to be assertive. Exactly, but on the other hand, if they only said as to two or three members and the organization said, look, we don't even, there may be others. If you couple with that, and this is the point I was getting to a little bit earlier, the estoppel provisions that are in the Act, those provisions, they don't themselves create an injury because if Consumer Watchdog will never be sued under the 913 patent, the fact that now or in the future they can't bring another one of these proceedings doesn't affect their real life rights. But for a party that may one day face a claim, it may have the effect of essentially accelerating the controversy because it becomes a question of now or never. And that, we think, in a close case, may well tip the balance toward justiciability. So the point, if I may, just sort of circle back and make is that it is absolutely the case that the Article III injury in fact requirement applies and appeals out of the PTO. It is absolutely the case that an organization like Consumer Watchdog, which has no concrete injury in fact, it's not just an illegal injury, but an injury in fact from the validity of the 913 patent, has no standing. But it will very often be the case that the sort of entities that enacted the scheme will have that standing, will be able to make that showing to this court. And indeed, the court's opinion in this case, I expect, will provide a great deal of guidance to those bringing those appeals about exactly what sort of evidence they need to show. But Congress, we don't think they intended to and certainly could not have enacted a statute that would allow an organization like Consumer Watchdog merely by the fact of this procedural opportunity to challenge a patent in which it has no actual interest. All right, Mr. Briefman. Thank you very much. Ms. Stoll. Thank you. May it please the court. I want to make it clear for the court that WRF agrees with the government on the positions that it has in its briefing that the positions it's taken today. For example, with respect to the government's brief at pages 13. Mr. Freeman didn't quite get to get to the estoppel provision. Why don't you tell us about that? Well, we would agree with Mr. Freeman's position that the estoppel provision could, in some cases, make an injury more concrete and immediate. We don't think it would apply. But it could be, but I think what he was suggesting is that that too is speculative, but necessarily, but sufficient, but very speculative, right? If someday they might be charged with infringement. I think it would depend on how speculative it was. There's a, you'd have to consider a totality of circumstances like you do in all Article III standing cases. And one of those circumstances would, of course, be the patent owner's behavior and what the likelihood would be that the patent owner might assert that patent. Factors that you would consider are things like the relationship between the patent owner and the requester. Are they competitors? Have they had litigation in the past, patent litigation in the past? The requester's level of interest in the patent. Is there some commercial activity that they're prohibited from engaging in or they're, you know, concerned about engaging in because of the patent? Now, I think it was your position initially, although maybe one of mine, that you said that the same requirements apply to DJ jurisdictions. They do in these circumstances. And I, now that you say you agree with the government, do you agree with their more relaxed standard with regard to the law? That's true. That's one of the reasons why I wanted to start with this was that after reviewing the government brief and having more of an opportunity to think about that issue, we think that the government's position makes the most sense. And given the Supreme Court statements in Lujan and EPA versus Massachusetts where they talked about how the requirements of redressability and immediacy would be lessened or might not even apply where you have a procedural right to appeal, I think the position the government takes makes a lot of sense. I also would want to point out that in preparing for this argument, we did look at statistics published on the PTO's website just with respect to the AIA's inter-parties review proceedings and post-grant review proceedings. And so far, of those inter-parties review and covered business method petitions filed, 89% of them on their face at the time of the filing indicate that there is a concurrent district court litigation between the patent owner and... What percent was that? 89. 89. 89. 89. And these are just... What about business method patents? These are the covered business method patents and the inter-party proceedings. Just those filed after the passage of the AIA. The business method patents part is a little misleading, isn't it? Because doesn't that specific part of the statute require an infringement suit to be ongoing or something like that? Yes, it does. So let me tell you the statistics for IPR alone. That is true. For the IPRs alone, 97 out of 800 and 505 had no associated litigation identified on the face of the petition. So that translates into about 88% where there is a current district court litigation identified on the face of the... At least on the face of the filing when they first filed. That doesn't account for a situation where someone's been threatened or where after the IPR is filed, the patent owner files his litigation. With respect to some of the other factors, to throw them out there, factors we thought about that are relevant to the inquiry are the patent owner's behavior and specifically where there is a threat of enforcement of the patent. Is the patent owner licensing the patent for free like WORF currently does with universities? Or do they have a past history of bringing lawsuits? What about is the process of having to get a license even if it's for free of sufficient injuries? I don't think so. No. If it's not, I wouldn't think so. I don't think you'd have to look at each circumstance, but I wouldn't think that it would be if it's for free. Now, if there's also for commercial entities, WORF does charge for license. So in that circumstance, there might be an issue with that. I would say that we were asked last time where you would draw the line, and the only bright line that I could think of here would be that an organization that claims no commercial interest in the patent is not a competitor, a prospective competitor, a licensee, or a prospective licensee, and has no basis for membership or organizational standing. That's Article 3. What about an iPhone user? The iPhone user? I think that that's an interesting situation. I think you'd have to look at whether Samsung, whether there's any indication whatsoever that Samsung would assert its patent against an end user. Does the court have any further questions? Thank you, Ms. Stoll. Ms. Hassan, please take the time you need. We understand that there was plenty of time on the other side. Thank you. We're very liberal with your time needs. Thank you. I'd like to clarify that our dispute is between Consumer Watchdog and the government, so the controversy that we need to support is between us and the government. It doesn't matter how WARF asserts its patent, it doesn't matter what interest we have in practicing WARF's patent, because the interest that Congress has given us, the interest that Congress has elevated to legally cognizable, is our interest in a satisfactory decision. And in Section 141, the same is true for patent owners as for third-party requesters, that there is a right to appeal a decision with which that party is dissatisfied. Sure, but if a patent owner gets denied a patent, then they have a concrete interest, there's no dispute there. And we have a concrete interest when we are denied the decision in which we have invested time, effort, energy, met our threshold, burden of proof, and given up a right. And this is the right that Congress gave us. Second, so evaluating whether we are competing with WARF to practice their patent, or whether WARF has asserted its patent, is evaluating standing in a dispute with WARF, when the standing that we're arguing we have is in a dispute with the government. It's like taking the temperature in Washington to figure out whether it's cold in Los Angeles. It's completely measuring the wrong thing. Second, there is no right to  your arguments. Can you talk to me a minute about the procedural substantive distinction here? All of your concerns about your dispute with the government are on kind of a procedural level that you wish to have a right to make your arguments. But is there a, as you know, the Constitution requires this concrete injury, usually economic in nature in our area. Do you have anything of that nature that you can point to? Well, in order to receive a final decision, we had to, for example, pay a fee of $8,800. That's an economic injury that we suffered in order to receive  final decision. That's also not a stake in the decisions outcome. That's merely a gatekeeping matter that would be true of anyone who entered the front door. Again, any member of the public will have to pay the fee. You've got to have this unique injury in fact to you and your interest that's different from the general public. It was Congress's decision to make it such that everyone who reached... Look, I think, I mean, at least I understand, it seems like Congress intended to do exactly what you're saying they intended to do, but under some kind of concrete injury that they're trying to protect by these procedural rights. It can't be the money you spent on the litigation or the time you invested or things like that because that happened in Lujan, that happened in Massachusetts as well. Well, in the examples that the government gave today, the money that you spent on the litigation is very easy to make a request. It's free and all you have to do is reasonably describe the documents you want. You don't have to argue to the government, this is why I'm entitled to the information, this is why it doesn't fall within one of the nine exemptions. Ever since my first year of law school, I wanted to ask this question. What does Marbury v. Madison have to say about this case? In Marbury v. Madison, the court was trying to prevent a situation in which the courts were able to bully the legislature because the courts shouldn't, it's a separation of powers issue and the courts shouldn't be able to do that.  the court did that with the constitution required, right? Exactly, but in this case, Congress ensured that every party to whom the statute applied was injured before they got to that point. The injury is inherent by virtue of the statutory scheme that Congress created. The other point I wanted to make   to whom the statute     got to that  In Marbury v. Madison, the court was trying to prevent a situation in which the legislature shouldn't be able to get information from the government. The need to get information from the government protects the right to free speech and the right to the press and things like that because in order to write effective news stories you have to be able to get   information from the government. It's an easier case to show here that we have injury than it is in the FOIA cases. So Congress absolutely could fix this and change it and if they didn't want us to have this right here they could have said so. And using the FOIA standards they could have said no. The FOIA standards    the FOIA standards that are in the FOIA standards. And the FOIA standards are different than the FOIA standards. So we have to make that evaluation. I'd also like to make the point that the purpose that is served here where the purpose of FOIA is to give the public information that the government should disclose  the public. So this court has said that the re-examination statute's purpose is to correct errors made by the government to remedy defective government not private action and if need be to remove patents that never should have been granted. Reiterating our point that our dispute is with the government and not with the court. Does the court have any further questions? Thank you. Thank you very much. We appreciate the double effort that both parties gave to this case. Thank you very much.